Case number 24-3356, Philip Jones v. Tim Shoop. Argument is not to exceed 30 minutes per side. Mr. Wilhelm, you may proceed for the appellant. Thank you. May it please the court. Your honor, I would like to reserve seven minutes of my time for rebuttal. Sure. This afternoon, I will argue our Strickland claim based on trial counsel's failure to call Dr. Gary Bevin as a history of mental illness for the eight years that Bevin treated him as a prison doctor. This claim is presented in our third assignment of error as subpart D. I wish to explain that I didn't draft this claim for the brief, but as I was preparing for oral argument, I took a fresh look at it from the basement up, and I concluded that this Strickland claim is likely Jones's strongest issue for review. So based on that, I would like to focus my argument this afternoon on counsel's failure to call Dr. Bevin as a mitigation witness. You may. Thank you, your honor. In the penalty phase, the defense presented testimony from a psychologist named Dr. James Siddle, and he testified about a range of mitigation topics, including some evidence of Jones's mental health history, and he diagnosed Jones with a mood disorder. However, through Siddle's testimony, the jury heard that Jones malingered mental illness symptoms, especially symptoms of psychosis, and during the prosecutor's cross-examination of Dr. Siddle, the jury heard that Jones had been described by a treating doctor at the Oakwood Psychiatric Prison Hospital as, quote, a blunted sociopath who malingers psychotic symptoms. Siddle was unable to agree with that assessment. So Siddle's testimony left the jury with serious doubts as to whether Jones's mental illness was genuine or contrived, especially regarding psychotic symptoms. So for that reason, trial counsel needed to call Dr. Gary Bevin in the penalty phase to rebut the prosecutor's assertions that Jones exaggerated or malingered psychotic symptoms. Bevin treated Jones for eight years at SOCF. Your Honor, the controlling law for this claim is, of course, the two-part Strickland test. The last court to adjudicate this claim was the Ohio Court of Appeals on post-conviction review. It did not adjudicate the deficient performance prong. It assumed deficient performance. Can I ask you something I'm struggling with and maybe you can help me? Like, what's, you know, I always think about what's the line and where does it come from? And it seems to me here, at least in the mitigation phase, and you can draw distinctions, obviously, but they had both Siddle and Hardy. Is that how you pronounce? Hardy, I think it is. Hardy? Okay. So Siddle and Hardy. Why can't they, once they get those experts, rely upon them? And what makes it deficient per se for them not to rely upon experts that they have retained and are talking to? Well, I think the short answer to that, Your Honor, is that counsel didn't conduct a reasonable investigation into Jones's mental health history. But what they did do, and I'm sorry to interrupt you, is they retained Siddle, right? And it was Siddle's, in their mind, like if I'm a lawyer and I'm preparing, I'm just thinking of my own activity as a lawyer, I'm preparing for trial. If I retain an expert like Siddle, I count on Siddle to do this stuff and Hardy and them to come to me if they have issues or if they see something where I need a different expert at that point. Why would be on, like what case would stand for the fact that when you have multiple experts for mitigation that you have to go get more? Well, I don't know that it's necessarily the notion that they have to go get another expert. My idea, and I think what the harm here is, that they failed to investigate factually Jones's history and background. But they conducted extensive interviews of the family, the lawyers who were a poor source of, let me explain, at the post-conviction hearing Jones's counsel asked defense counsel, the lead counsel O'Brien, if they had considered reaching out to Jones's prior treating doctors. And O'Brien's answer was that he consulted with the mom and the family to ask them if they should look into that line of questioning. And what I say is that that's a deficient investigation right there. And what case stands for that? In other words, what case stands for the fact that they can't rely upon the family in analyzing the history and their own experts who could have also reached out, as you know? Well, I think that Rompia versus Beard is the closest to this case. But I thought in Rompia they presented no evidence. In other words, here they presented significant evidence. Am I wrong in my memory of Rompia? There was little evidence presented. And in Rompia, counsel was faulted for not going across the street to get a post-conviction file, knowing, having noticed that the prior conviction would come into play. And here, I think this Oakwood report is very important, your honor, because trial counsel had notice of this in August of 2007 when there was a competency assessment done of Jones. And the Oakwood report came out at that point calling him a blunted sociopath who malingers symptoms by a treating doctor. So, counsel had noticed that malingering is going to be a big problem. They weren't able to address that with Dr. Siddle. First of all, Dr. Siddle's review, we know from the record, was inadequate. And counsel's direction of them was inadequate because Siddle only billed for 4.75 hours to review the mental health records and all the records. And that's an inadequate amount of time. And counsel was on notice that there was this malingering problem out there. So, what they did was to reach out to the family to ask for leads on treating mental health doctors. And in that respect, I think it is like Rompia because counsel has an obligation to do, this court has said many times, an independent mitigation investigation and not just rely on what the family would say. And factually, on this case, your honor, there's another wrinkle to it why it was unreasonable for counsel to rely on the family to investigate Jones' mental health records. First of all, the investigation revealed that Jones came from a dysfunctional and chaotic family. And also, because Jones was incarcerated for 14 years, that meant that the family at that period of time only had at best sporadic contact with him. So, the family was not a reliable source of information given the chaotic dynamics in the family and given the fact that their contact with him was only sporadic. That was a deficient way to go about looking at prison records to see who treated Jones at prison. So, counsel relied on the family rather than looking at these records they had under their nose. And O'Brien himself said that it was his responsibility to look through records and that he does, but this fell through the cracks and Jones was prejudiced. If I may, your honor, the deficient performance prong was not adjudicated, but the prejudice prong was adjudicated. The Ohio Court of Appeals said there was no prejudice because the information between Siddle and Bevin was only cumulative. And I think that is, but their testimony was materially different for two reasons. And that finding of fact by the Ohio Court of Appeals is clearly unreasonable on the record evidence for two reasons. First, Siddle said that there was a consensus of mental health doctors in the Ohio prison system who found Jones not psychotic. But Siddle's testimony was simply false because Bevin diagnosed Jones from 95 to 2003 as his primary mental health provider. His initial diagnosis was schizoaffective disorder, which has psychotic component. His modal diagnosis remains schizoaffective and his last diagnosis was also. I thought, so on that point, I thought one of the, am I wrong? I can look through my notes, but one of the doctors testified as to apparent schizophrenic behavior. There was some history of mental health within the family that did come out through Siddle's testimony. And then at the PCR, at the post-conviction hearing, didn't your expert admit that that was sufficiently close or something to that effect? Well, certainly not Dr. Bevin. No, he wouldn't have testified that that was. Maybe it was Spitz. I can't remember who it was that testified. Well, here counsel needed to call Dr. Bevin as the treating doctor because he had this eight year period of block with. I understand what you're arguing now, but what I'm talking about is at the post-conviction hearing, I thought that someone testified, I'm trying to find where I wrote it down, that there was apparent schizophrenia and that one of your own experts admitted that that was sufficiently close. It was Siddle, right? He testified as to that. Siddle was testifying for the state at the post-conviction to defend against the ineffective counsel claim. The state called Siddle for that. Okay. Siddle testified. Siddle wasn't one of Jones's experts who said that. I'm just trying to clarify a little. Right. But who, during the trial, didn't someone say there was apparent schizophrenia? There was an indication that there was mental health history, including some suggestion of schizophrenia in generationally. And explain to me why that would be, it would be prejudicial not to call Batman under those circumstances. I guess that's where I'm tripping up. Well, whether the relative had it or not, the problem here is that the jury heard that a doctor at Ohio Psychiatric Hospital, Oakwood, had said that Jones is malingering psychotic symptoms. And Siddle had no answer to that other than to say that, as a general matter, malingering and mental illness can coexist. Now that's true, but Dr. Bevin, that's not cumulative of what Dr. Bevin could have offered. Dr. Bevin, as a treating doctor, had three specific reasons why he believed Jones was not malingering psychosis. And why couldn't they rely on, once they hired, this is what I keep coming back to, is what case says they can't rely on Siddle, who is a forensic psychologist, to figure this stuff out for them? He conducted interviews, he reviewed the records, he testified that Jones had serious mental health struggles about the suicide attempts, depression, bipolar, psychotic symptoms, including apparent schizophrenia. Why isn't that sufficient? In other words, why can't a lawyer rely upon that? What's the line at which a lawyer, I mean, Rapelia doesn't help you there. What case says a lawyer can't rely upon their own mental health experts and have to investigate everything? I think, as we've said, ineffective doesn't require, to be effective, you don't have to be perfect. Right. Well, certainly, I think counsel could have been effective had they made sure that Dr. Siddle covered the information from Dr. Bevin in his testimony, so he wasn't giving false information, that if there was a consensus of doctors who thought that Jones was not psychotic. But a good part of the problem with Siddle was that, like I said, he only had 4.75 hours reviewing records, and he was used as a sort of what I would call a Swiss army knife psychologist expert. He was brought in not only to talk about mental health, but he was brought in to talk about bullying that Jones had endured when he was a child, and also family dynamics, personality testing, intelligence testing. And Siddle was brought in very late in the game, so he was required to do all of this in a very compressed amount of time. But the death penalty spec was pretty late in the game, too, wasn't it? That's true. It was. It was added, but at the same time, counsel had to respond to that with proper preparations after it became a death spec. And their preparations were very hurried, and they rushed Siddle through, and they had him doing multiple tasks. And his billing to the post-conviction court, again, it was offered as a petition exhibit, exhibit 15, and he only spent 4.75 hours on the records. So in the proper case, it might be okay for counsel to just proceed with if they ensured that he was properly prepared and was aware of, investigated Jones's records. But that didn't happen in this case because Siddle gave false information about whether there was, again, a consensus of doctors thinking that Jones was psychotic. And again, if I may, Your Honor, the finding by the Ohio Court of Appeals that Siddle and Bevin had cumulative testimony is rebutted by the record because when asked about malingering, which was a huge issue in this case, and if I may, for illustration, the prosecutor argued malingering and the Oakwood records in closing argument for five pages in the Ohio Supreme Court opinion found that Jones has some mental illness, but gave it diminished weight by finding malingering. And the Ohio Supreme Court in its independent review also devoted a paragraph to the Oakwood. So the Oakwood report and that doctor calling Jones a blunted sociopath who malingers psychotic symptoms was a red flag for counsel to see that malingering was going to be an issue that they had to deal with to rebut it. So even if they could rely on an expert such as Siddle, they had to be prepared to rebut this Oakwood report that reasonable counsel would have seen coming down the pike. So all Siddle could say was malingering and mental illness can coexist, which has nothing to do about Jones. Siddle could specifically say and did, or I'm sorry, Bevin specifically said that he believed that Jones has genuine psychotic symptoms for three reasons. First, he explained that Jones was psychotropic medications, and he responded to those appropriately. Siddle explained that when you give psychotropic medications to someone who's not mentally ill, they will tend to respond to them by looking drunk or high, but that didn't happen with Jones. He responded appropriately. The second point that Siddle made was that the entire SOCF staff, mental health staff, was trained in malingering because bed space is at a premium at a place like SOCF, where inmates will malinger to get into better circumstances, and they want to save the beds for those who are truly mentally ill. So in addition to Dr. Bevin, you had other mental health providers, nurses, guards, all trained in malingering, but for the entire eight years that Jones was at SOCF with Dr. Bevin, Jones remained what was on the called the C1C case list at SOCF. That's significant because that's the highest level of care that SOCF gives to an inmate in their mental health system. And the third reason that Dr. Bevin was able to give a specific reason why Jones wasn't malingering psychotic symptoms was that he believed that Jones had engaged in actual self-harming rather than threats or suggestive behavior of self-harming, which Siddle believed usually happens when someone's not genuinely mentally ill. So because Bevin was able to address the malingering in a materially different way, and because Bevin had a different, stronger, much stronger opinion about psychosis in a materially different way, the state court's finding that those testimonies were cumulative is factually unreasonable under D2. So that leaves us with a de novo review of prejudice. Can I ask you just, I'm curious, I haven't gone back and looked. So if I recall your argument, I know you didn't write your brief, so I hate to even bring this up, but your argument in your brief that you dedicated one paragraph to Bevin, and now he seems like the mountain that the government can't get over. Was it argued to the district court that Bevin was the critical witness that they failed the call? Because I don't even see it in your brief here. I see the paragraph about Bevin, but I don't see where it says that they should have called Bevin. What I, and excuse me if I'm getting your argument wrong that you made, but I thought it was that you, that they failed to retain an expert that could testify as to schizophrenia. That is the claim regarding Dr. Stinson, but as it pertains to Dr. Bevin again, I think the value of Bevin is not to bring him in to have him do his own trial level assessment. His value was to bring him in to say that Jones had, while in prison, had a genuine history of mental health. I fully understand that. Has this argument been made? In other words, it's not in your brief. I get that Bevin himself is in your brief, but the argument that they should have called Bevin, they should have relied on Bevin, they should have done all this. You've made a very effective argument today on that. I'm asking, was it presented to the district court? Was it presented to the state courts? Was it presented to us? Yes, your honor. My answer is that it's fairly presented, but I apologize because it wasn't as well written as it should have been. Where is it in your brief, just so I'm clear? Because I see the only point about Bevin I see is under subclaim D and in the reply brief also. I'm sorry? And in the reply brief also. Right, but in the main brief, I see it on page, the main argument to be on page 66. And you tell me if I'm wrong. And that is Bevin Jones, primary treating psychiatrist, that's explained. Bevin stated this interpretation and he testified that he did not believe Mr. Jones was predominantly malingering. Sorry, your honor. I'm taking a minute here to get to page 66. That's all right. That's I'm just asking you because you can tell me it could be somewhere else and I missed it. But that's the only argument I recall of Bevin. And it's the only argument. Yes, that's that's the main argument in the brief. Okay. All right. But I think that it fairly presents the idea that Bevin was needed to rebut false information about Jones's psychotic symptoms. Okay. I apologize to the court that we didn't do a clearer job arguing it. So I wanted to make sure I did that today that we had that opportunity. Right. On DeNovo review, your honor, if I may, Jones was prejudiced because... I'm sorry. Can I ask one other question? I'm sorry. Was Bevin, did he testify at the PCR? He provided an affidavit and testified. Okay, great. I'll go read it. And then one final question. The quote I'm talking about is Stinson said that Sidall's differing diagnosis are actually perhaps not as far as off as it may seem. So I'm not saying that Sidall was wrong with the diagnosis of mood disorder. And that's attributed to if you look at the records and the doctors, they'll just say that over the course of time, there are varying diagnoses in prison. There are different snapshots and they'll see an inmate at a different time and they'll be in a different state. They'll be in a different part of the prison. Sometimes they're being treated in the RT, the residential treatment unit. Sometimes they're back in the regular block. So you can see different symptoms and different snapshots of clients or of defendants at different times. So that's unsurprising. And that's also significant why you needed Dr. Bevin for the defense because he was Jones's, not only a treating physician, but he was Jones's primary mental health provider while he was at SOCF. He saw Jones 35 times over the eight-year period and documented that 35 times. And he had Jones first diagnosis was schizoaffective. Last diagnosis was also schizoaffective. And when Jones transferred from SOCF to Ross Correctional before he was released in 2004, the mental health staff at Ross also saw schizoaffective disorder. So Jones was prejudiced by this because Settle could only tell the jury that Jones had a sick mind, had a sick mood, whereas Bevin testified that Jones had both a sick mood and a sick mind. And it was necessary to deal with the Oakwood report to rebut that because the prosecutor hammered it home on cross-examination and hammered it home in closing argument. So if I may sum up, counsel was professionally unreasonable in this case because they had a problem in the ODRC records of malingering. And that problem had to be addressed. And counsel was on notice of that problem, as I say, when they had the Oakwood report in August of 2007. So professionally reasonable counsel would have realized that the rebuttal to that record was also in those same records. And for that reason, I see this case is somewhat on parallel with Rapia, is that counsel had the information under their noses. This was not a needle in a haystack. Dr. Bevin's information is spread throughout those SOCF records, which comprise a big part of Jones's life history, as well as his time in prison. Jones spent 14 years in prison, and he was only 37 years old at the time of the trial. So under DeNovo review, we asked the court to find deficient performance because counsel relied on the family and didn't conduct an adequate independent investigation. On the merits, the state court unreasonably found that Bevin's testimony was cumulative assentals. It was not. And Jones was prejudiced because had Bevin testified, the jury would have left with a firm impression that Jones had a chronic, severe, genuine mental illness with psychotic features. And for that, Your Honor, I will rest at this point unless you have further questions. Judge Gibbons, do you have any questions? None. Okay. Thank you very much for your thoughtful argument. You'll have your full rebuttal. Thank you, Your Honor. The government may proceed. I'm sorry. I think I'm unmuted. You are. May it please the court, my name is Brenda Likla, and I represent the warden in this case. First, I'd like to start off by saying I take exception to the fact that we're arguing something that was not briefed pretty much at all. It comprises one paragraph in the appellant's brief. The argument is that Jones' counsel failed to engage experts and present testimony about the mental illness. And what he's saying is, had they done an adequate investigation, which is briefed, had they done an adequate investigation into his mental disorder, they would have discovered Bevin's. And had they discovered Bevin's, they would have had someone that could testify specifically that he wasn't malingering and he had this long history of psychotic disorder, for lack of a better way, or schizophrenia, or however you want to say it. I guess that's their argument summarized in a nutshell, not as well as they made it. But why can't I read that out of their brief? Because they do argue throughout their brief that it was an insufficient investigation. The insufficient investigation caused them not to present sufficient testimony of mitigation. And had they presented sufficient testimony of mitigation, it would have resulted in a different outcome. Your Honor, I don't believe that that's a fair reading of the argument. They have been spending most of their argument time both below and here in saying that they didn't do sufficient. But it's only now an argument that he gives any specifics as to it. The district court had basically admonished Jones by saying you don't give any specifics, you just make these broad assertions that they should have come up with more. And now we're getting that more. This was not specifically... Maybe Mr. Wilhelm's just... But maybe Mr. Wilhelm is the best of the advocates. But the reality is, let me read to you from their brief. They say, as to the mental illness testimony, the trial court found that the testimonies of Stinson and Bevin were simply cumulative of the testimony of Sidall because... This is patently inconsistent with Stinson's testimony. And then they go on to explain, I agree with you, it would have been nice if that's where they made the argument that Mr. Had they done more, they would have called Bevin's because he could have provided this critical link that they've been looking for. Yes, your honor. First of all, Bevin's name is mentioned only four times in his amended petition. And that's on page ID 12052 through 12053. Those are the only two pages that... I'm sorry, 12052 to 12053? Yes, your honor. That's PDF pages 116 and 117, if you're looking at the PDF. And give me the record site again. It is document 44-2, page ID 12052. Yeah, I got that. Okay. Okay. So, Dr. Bevin's name is only mentioned on those two pages in the amended petition. Would argue that this was not fairly presented to the court below, but even if it was, the standard in a habeas case is a doubly deferential standard for Strickland. They must overcome the deference and Strickland's deferential standard. And as the court pointed out, there is no authority that requires a defense attorney to get additional... Sorry to interrupt. What he's arguing is that Bevin was right under their nose. Had they done a cursory investigation of his background. And that is similar to Rompelio that says you should discover evidence right under your nose. Yes, your honor. However, they did present as the court noticed testimony from Dr. Siddall that there was mental health issues in the family and with him. Now, the fact that the expert that testified at trial also indicated that Jones had a history of malingering. That is definitely information that should have been and was correctly admitted at trial. The fact that... I'm sorry to interrupt you, but so what they say in the paragraph before Bevin is that the psychotic... Siddall, their own guy, said that the psychotic symptoms were consciously exaggerated, right? It suggests that they were. And their point now is Bevin would have rebutted this. And their point, I think, at least in the petition and not as articulately made in the brief, and I agree with you, it's cursory in the petition as well, is that Bevin was the key to rebutting this. I wish that was the header. I wish they had made that argument clearly. I agree with all that, but just for the sake of argument, assume that they had. How do you deal with it? Well, your honor, you deal with it by the fact that the state courts were not unreasonable. Again, as in order to overcome their burden, they must both overcome Strickland's deference to state or to trial attorneys, and they have to overcome the deference to the state court decision. The state court held a six-day hearing where they heard from 12 witnesses for Jones, five of which I believe were experts. They also heard from the entire defense team. And Dr. Siddall testified that he had plenty of time to complete the tasks and to do the investigation. Hurdy also said he had plenty of time, even though they both came in slightly late in the game. I'm sorry to interrupt you one more time. Lance, I don't think the clock is working just so you're aware. Go ahead, counsel. Okay, there we go. Lance magically made it work. Trying to remember where I was. My question was, assume they made a good argument, and you started giving your response. Assume they made a good argument that the key to this whole case was Bevin in the mitigation phase, and they should have called Bevin, and had they done an adequate investigation, they would have discovered Bevin. Yes, I'm sorry, your honor. No, that's fine. But Dr. Siddall and Mr. Hurdy both testified they had sufficient time, they had time to review the records, they reviewed the records, they spoke to the family. Testimony at trial was that there was history of mental illness. The jury was aware that there was a history of mental illness. Was the jury also made aware that Jones had a history of absolutely, but the testimony was still there that there was a history of mental illness. Would that have a reasonable probability of a different result had Dr. Bevin testified? I highly doubt it in light of all of the evidence that was submitted. Let me make the best argument for the other side, which is that malingering is very damning for someone that is now a convicted criminal at the time of mitigation, and facing a convicted murderer, and facing the death penalty. Doesn't counsel have an obligation if the evidence is there to rebut the malingering, and wouldn't Bevin have been compelling evidence of that? He might have been compelling evidence, Your Honor, but at the same time, there is no guarantee that there wouldn't have also been damning evidence in his testimony. He testified that he testified at the post-conviction that he was his doctor at the prison. That reinforces the fact that he had been to for an attempted rape that then could be used. That came in at trial, so the jury knew that. Right, but it could have reinforced that he was a rapist, and he already went to prison for rape and wanted to. I thought you brought that up in the aggravating factors. That was brought up in the aggravating factors, but it could have reinforced the fact that the state could have cross-examined Bevin on those points as well, and hammered it home even again, which then we would be here on an ineffective assistance of counsel for calling Bevin to allow that testimony to come in yet again, so reinforcing it to the jury at the mitigation phase. The fact that you also had Stinson who testified that he opined that there was a reasonable degree that he suffers from some kind of disorder, but he was critical of the mood disorder, doesn't negate the fact that there is no additional authority that requires an attorney to continue to hire more and more experts, or to continue to find. They're certainly able to rely on the experts that they have. They're not mental health people. They got a mental health person, and they were able to rely on that mental health person. There's no authority that I'm aware of that says they have to keep investigating and keep going and looking for more and more experts when they have somebody who says he has mental disorders. Would Bevin have been able to give them more specific disorders? Maybe, but that's not going to change the jury's view. They knew that he had mental disorders. They also knew that he had a history of exaggerating those disorders, and the fact that he was diagnosed in prison, quite honestly, while I don't want to disparage the mental staff at prisons, they do tend to want to medicate inmates. You agree that he treated him for eight years. He would have a better idea than anyone of the malingering, and even he admitted there's some initial exaggeration by the inmates, but thereafter, he didn't believe that Jones was malingering. Right, and I don't believe that Dr. Siddle testified that he was always malingering. It's that he had a history of malingering. It's not that he had no mental disorder and he was completely faking it. It was that he had a history of malingering, that there's a complete difference to malingering that he had no disorder or that he had a disorder when he didn't and exaggerating his ailments to his benefit prior to going to trial in this case, and those are vastly different, and I don't believe that Siddle testified that he was malingering a disorder in its entirety, just that he had a history of malingering. Again, the state post-conviction court heard six days worth of testimony from multiple experts and the entire defense team. They were certainly thorough in their analysis. The trial court, I believe, issued, I think it was a 68-page opinion. The Court of Appeals issued a lengthy opinion detailing all of the testimony and all of the experts and what they said and what the defense team had testified to, and that decision is afforded deference under AEDPA, and the attorney's conduct is afforded deference under Strickland. So, you have the doubly deferential standards that they must overcome, and they just haven't done it, especially in the limited amount of argument that they've presented on this claim at the district court and in their briefing here. If there are no additional questions, I believe that the decision of the district court should be upheld. This court should find that the state courts acted reasonably in denying his claim. The district court correctly denied his claim, and this court should affirm the decision below. Okay, thank you, counsel. Mr. Wilhelm? Yes, thank you, your honor. As you noted, your honor, you're absolutely correct. In this case, the prior rape was prominent, and Jones's time in prison was not a secret to any juror by the time they got to the penalty phase. So, there was no harm in discussing prison records at that point, because that was- I guess I agree. I don't disagree in part, but I mean, Bevin, as I understand it, even acknowledged the malingering, as I think you acknowledge in your petition, and as the government argues, at least below, his case notes often discuss the malingering, especially early on, and then even some later, as I understand it, although I haven't looked at them myself, which I'd like to do. But, I mean, why wouldn't that cut against it? And then the government's point is pertinent, because they could reiterate that he had found malingering, and then they could go through things that the case law has said, like Harrington talks about the dangers of when you call an expert. There are downsides, and the government would have taken advantage of those. But, in the end, the character of Bevin's testimony would have far outweighed any downside, because, again, he was the chief psychiatrist at Southern Ohio Correctional Facility for the time he was there. He's a board-certified forensic psychiatrist. He was Jones' primary treating doctor. He saw Jones 35 times over eight years, and made documentations 35 times to say that he saw Jones. And, again, at the end of the day, he considered malingering, and he considered all these things, and he had these three reasons why he concluded at the end of the day that Jones was not. So, where this leaves us is we go back to the state court opinion, which adjudicated only the prejudice prong by saying that Bevin and Siddle are cumulative, and I'll reiterate again that they're certainly not, because Siddle testified flatly that there's a consensus of mental health doctors in the prison system who diagnosed Jones and said he was not psychotic. And then you have the primary doctor at, and, again, he's the prison doctor, too. This isn't a paid defense expert coming in. This is somebody you wouldn't hire, in my opinion. This is somebody you would subpoena. And he's not a defense expert. He worked for the prison system, and he's going to be there to say that, yes, after eight years, despite all this information that goes different ways, I had the best look at him, and I'm convinced that he was schizoaffective. And there is agreement between Bevin and Siddle. So, the Ohio Court of Appeals is partially right. They both found a mood disorder, but the significant difference is that, unlike Siddle, Dr. Bevin also found that Jones had a sick mind. So, unless the court has any further questions, I will conclude and ask that the court find that counsel were deficient under De Novo review because they didn't do an adequate investigation. They left it to the family rather than looking at records that were right under their nose. So, I think Rumpia is a bit of a parallel here. And we have prejudice because Siddle would have said Jones has a sick mood. Bevin would have said, no, he's seriously mentally ill and has a sick mood. And Bevin would have addressed the malingering issue that the prosecutor stressed on cross-examination, five pages of closing argument. And again, you're left with the prosecutor attacking an ODRC doctor, not a defense expert, but an ODRC doctor who's not brought in as a defense expert, but as a fact witness for Jones's mental health history. So, with that, I would ask the court to find that counsel were ineffective under Strickland and issue the writ for Jones for a new penalty phase on this claim. Judge Gibbons, any questions? No. Thank you very much for your thoughtful argument, counsel. The case will be submitted.